**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ──────────────────────────────── x | |
| CARL MACK and ALEC GABLE, on behalf of themselves and all others similarly situated, | : : : |
| Plaintiffs, | : Case No. : : |
| v. | : : |
| E. MISHAN & SONS, INC. | : **CLASS ACTION** : **COMPLAINT** |
| Defendant. | : |
| ──────────────────────────────── x | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiffs Carl Mack and Alec Gable are consumers who purchased cooking pans manufactured, marketed and sold by Defendant.  The packaging on the pan prominently described the pan's "non-stick" features (the "Nonstick Representations").

2.      However, food sticks to the pan and the Nonstick Representations are false.

3.      Mr. Mack and Mr. Gable bring this action as a class action on behalf of purchasers of the pans and Defendant's other "non-stick" cookware seeking refunds and injunctive relief to stop Defendant's unlawful practices.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members;

1

(2) Plaintiff Mack is a citizen of the State of Maryland, Plaintiff Gable is a citizen of the State of Arizona, Defendant is a citizen of the State of New York, and more than two-thirds of Class Members reside outside New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

5.       This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York.  In addition, Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

6.       Venue is proper because Defendant resides in the Southern District of New York, and a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

**The Parties**

7.       Plaintiff Carl Mack is a resident of Maryland.

8.       Plaintiff Alec Gable is a resident of Nevada.

9.       Defendant E. Mishan and Sons, Inc. is a New York corporation with its principal place of business in New York at 230 Fifth Avenue, Suite 800, New York, New York.  E. Mishan and Sons does business as "Emson" and sells the pans and other cookware under the brand name "Gotham Steel."

2

**Allegations Specific to Mr. Mack**

10.     Mr. Mack purchased a single pan from KMart in Oxen Hill, Maryland in December of 2016.

11.     Mr. Mack relied on the Nonstick Representations on the cardboard cover on the pan as well as the TV advertisements he had seen.

12.     At the time of his purchase, because of the Gotham Steel commercials he had seen, Mr. Mack believed that he didn't need butter or oil when cooking.  In the commercials, Mr. Mack even saw an example of candy burning in the pans and then just being wiped out of the pan with a cloth.

13.     Though Mr. Mack thought he was buying a nonstick pan, the food began to stick severely to the pan within one month of purchase.   Ultimately Mr. Mack stopped using it.

14.     If Mr. Mack thought that in the future he could rely on the Nonstick Representations or similar representations made by Defendant, he would buy the pans again.

**Allegations Specific to Mr. Gable**

15.     Mr. Gable purchased two pans from the Gotham Steel website on May 25, 2018 for a total of $50.82.

16.     Mr. Gable purchased the pans solely based on the representation that the pans were "non-stick" and that the pans did not require butter or oil to cook with.

17.     Mr. Gable saw these representations on television.

3

18.      Mr. Gable tried to fry eggs in one of the pans shortly after he purchased the pans and the eggs stuck to the pan.

19.      Mr. Gable found that other foods stuck to the pans as well.

20.      At first, Mr. Gable used the pans daily. After the first two uses, he began to cook with oil and butter but food still stuck frequently to the pans.  The pans were often caked with black burnt marks and Mr. Gable discarded them after about a month.

21.      If Mr. Mack thought that in the future he could rely on the Nonstick Representations or similar representations made by Defendant, he would buy the pans again.

**General Allegations**

22.      E. Mishan and Sons ("Emson") markets and sells cooking pans and other cookware (the "Products") under the brand name "Gotham Steel."

23.      Emson sells the pans through websites such as Amazon.com, Overstock.com, and in stores such as CVS, Wal-Mart, and Bed, Bath & Beyond.  It also sells through television infomercials and programs like the Home Shopping Network.

24.      The pans are sold individually for approximately $20.

25.      The pans state prominently:

              NON-STICK COOKWARE

              NO OIL OR BUTTER NEEDED!

              NO STICKING!

4



26.       The pans are also sold as part of sets of cookware.

27.       The box the pans and cookware are sold in states prominently:

**NO STICKING!**

**NO OIL OR BUTTER NEEDED!**

**NON-STICK TI-CERAMA COATING**





28.    The television commercial features "Celebrity Chef Daniel Green" stating that Gotham Steel is "the newest technology in nonstick cookware made with ceramic and superstrong titanium."  The commercial shows Mr. Green moving the pan around over a stove while fried eggs slide around the pan without sticking.  Mr. Green exclaims while doing this, "It's literally like cooking on air!  Everything slides right off!"  Mr. Green then slides the eggs off the pan on to a plate, which the eggs do without any sticking.

29.    Mr. Green than demonstrates how smores can be prepared in the pan, the pan can be placed into the oven to bake the smores, and then the smores will slide easily out of the pan when finished with no sticking.

30.    A gentleman in a blue shirt then says to the camera, "I never thought a pan would make my life easier, but it really has."

7

31.     The commercial then cuts back to Mr. Green stirring eggs in the pan with a fork and then a mixer, and saying, "No oil or butter! And absolutely no sticking!"

32.     Mr. Green then shows how burnt cheese sticks to a regular frying pan, but slides right off the Gotham Steel pan.

33.     Mr. Green then demonstrates that the pan can be cleaned by wiping it with a paper towel, leaving no residue stuck to the pan.

34.     Other commercials show burning other difficult to clean items such as candy in a pan.  These too are cleaned out by wiping with a paper towel leaving no residue stuck to the pan.

35.     These statements are referred to collectively as the "Nonstick Representations."

36.     These Nonstick Representations are false.

37.     Mr. Mack and Mr. Gable experienced food sticking when used as advertised. They experienced items burning onto the pans and being hard to clean.  Their experience was a common one.

38.     Excerpts from complaints from Amazon.com include:

▶I bought this pan and from the very beginning the food had stuck to the pan and ended up getting scratched.

▶[E]ncountered the surface sticking after about a month of use.

▶After 3d use egg is sticking to pot.

From Consumer Reports Customer Complaints:
▶Loved it at first.  It says that food doesn't stick, but if you don't put

8

anything in the pan, the food sticks.

►After using 3 times everything sticks to this pan…

►From the beginning everything sticks to this pan.

►It is worthless after a few uses.  Absolutely everything sticks to it.

►[A]fter a month everything sticks to it.

►This is the worst pan I ever purchased everything stick to the bottom…

## CLASS ALLEGATIONS

39.      Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is suited for classwide resolution, including injunctive relief.

40.      The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

41.      This action should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

42.      Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

43.      Commonality: The questions of law and fact common to the Class Members

9

which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the Products;

d.   Whether Defendant's false and misleading statements concerning their Products were likely to deceive the public;

e.   Whether Plaintiffs and the Class are entitled to injunctive relief;

f.   Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

44.   Typicality: Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

45.   Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud

claims are common to all members of the Class and they have a strong interest in vindicating

their rights; and they have retained counsel competent and experienced in complex class action

litigation and intend to vigorously prosecute this action.

46.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact

identified above predominate over any other questions affecting only individual members of the

Class.  The Class issues fully predominate over any individual issue because no inquiry into

individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive

and misleading marketing and labeling practices.

47.     <u>Superiority</u>: A class action is superior to the other available methods for the fair

and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual Class Members is impracticable,
cumbersome, unduly burdensome, and a waste of judicial and/or litigation
resources;

    b.  The individual claims of the Class Members are modest compared with the
expense of litigating the claim, thereby making it impracticable, unduly
burdensome, and expensive—if not totally impossible—to justify individual
actions;

    c.  When Defendant's liability has been adjudicated, all Class Members' claims can
be determined by the Court and administered efficiently in a manner far less
burdensome and expensive than if it were attempted through filing, discovery, and

11

trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase their Products.

48.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

49.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-

wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiffs would purchase the Products again if they could be certain that the Nonstick Representations were reliable.

50.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.  <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

b.  <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

13

        i.   Resolution of the issues presented in the 23(b)(3) class;

       ii.   Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

      iii.   Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel their Products with the Nonstick Representations.

c.   <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d.   <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights. In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

51.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class

Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same Nonstick Representations to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly describe its Products. Plaintiffs would purchase the Products again if they believed they could rely on the Nonstick Representations in the future.

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiffs and the Class)**

52.       Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

53.       New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

54.       The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

55.      There is no fully adequate remedy at law.

56.      Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

57.      Defendant's false Nonstick Representations constitute consumer-oriented conduct which is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

58.      Plaintiffs and the Class Members have been injured inasmuch as they paid a premium for products based on the Nonstick Representations.  Accordingly, Plaintiffs and the Class Members received less than what they bargained and/or paid for.

59.      Defendant's Nonstick Representations induced Plaintiffs and the Class Members to buy Defendant's Products and to pay a premium price for them.

60.      Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the Class Members have been damaged thereby.

58.      As a result of Defendant's recurring and unlawful deceptive acts and practices, Plaintiffs and the New York Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

16

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiffs and the Class)

59.     Plaintiffs repeat and reallege each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

60.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or
> commerce or in the furnishing of any service in this state is hereby
> declared unlawful.

61.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising' means advertising, including labeling,
> of a commodity, or of the kind, character, terms or conditions of
> any employment opportunity if such advertising is misleading in a
> material respect.  In determining whether any advertising is
> misleading, there shall be taken into account (among other things)
> not only representations made by statement, word, design, device,
> sound or any combination thereof, but also the extent to which the
> advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to
> which the advertising relates under the conditions proscribed in
> said advertisement, or under such conditions as are customary or
> usual. . .

62.     Defendant's labeling and advertisements contain untrue and materially misleading

statements concerning Defendant's Products inasmuch as the Nonstick Representations are false.

63.     Plaintiffs and the Class Members have been injured inasmuch as they relied upon

the labeling, packaging and advertising and paid a premium for the Products which bore the false

Nonstick Representations.  Accordingly, Plaintiffs and the Class Members received less than

17

what they bargained and/or paid for.

64.    Defendant's advertising, packaging and products' labeling induced the Plaintiffs and the Class Members to buy Defendant's Products.

65.    Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

66.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

67.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

68.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

69.    As a result of Defendant's recurring and unlawful deceptive acts and practices, Plaintiffs and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiffs and All Class Members)**

70.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.    Defendant provided the Plaintiffs and Class Members with an express warranty in the form of the Nonstick Representations which were written affirmations of fact.

72.    The Nonstick Representations were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

73.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

74.    Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

75.    Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiffs, on behalf of himself and Class Members, placed Defendant on notice of their breach, giving Defendant an opportunity to cure their breach, which they refused to do.

76.    Defendant breached the express warranty because the Products are not "nonstick."

77.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiffs and All Class Members)**

78.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

79.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

80.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

81.     Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

82.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) and 2301(5).

83.     Defendant made the Nonstick Representations in writing.

84.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

85.     The Products do not conform to the Defendant's written warranty in the form of the Nonstick Representations and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiffs and All Class Members)

86.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     Defendant is in the business of manufacturing, distributing, marketing and advertising the pans described above.

88.     Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted in writing and on the advertising and packaging that the pans were "Nonstick."

89.     Defendant breached the implied warranty of merchantability in that Defendant's Products' characteristics deviate from the label and products' description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products if they knew the pans did not conform to the Nonstick Representations.

90.     Within a reasonable amount of time after the Plaintiffs discovered the Products' misrepresentations, Plaintiffs notified the Defendant of such breach.

91.     The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault and without Plaintiffs' or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

92.     As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of

21

purchase.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (Brought on Behalf of Plaintiffs and All Class Members)

93.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

94.    Plaintiffs and the Class members conferred benefits on Defendant when they purchased the Gotham Steel pans or cookware.

95.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the entirety of the benefits conferred on it when Plaintiffs and the Class purchased the Products.  This is because Defendant knew that the Nonstick Representations were material to consumers yet false. Plaintiffs and the Class members would not have purchased the Products if they had known the truth about the Nonstick Representations.

96.    It would therefore be unjust and inequitable for Defendant to retain all of the benefits they received and not provide restitution to Plaintiffs and the Class.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the FRCP;

22

(b) Entering preliminary and permanent injunctive relief against Defendant, directing

    Defendant to correct their practices and to comply with consumer protection statutes

    nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including actual or statutory damages and treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action,

    including reasonable allowance of fees for Plaintiffs' attorneys and experts, and

    reimbursement of Plaintiffs' expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated:  September 4, 2019

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**WALSH PLLC**

Bonner Walsh, Esq.
1651 Long Haul Road
Grangeville, ID 83530
Tel: (541) 359-2827
Fax: (866) 503-8206
bonner@walshpllc.com

*Counsel for Plaintiffs and the Class*